IN THE UNITED STATES DISTRICT COURTS
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY DESANDO, :
:
   Plaintiff :
: CIVIL ACTION NO. 3:CV-07-1823
  v. :
: (Judge Vanaskie)
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
   Defendant :

## MEMORANDUM AND ORDER

This action comes before the Court on objections of Plaintiff Anthony Desando to a Magistrate Judge's Report and Recommendation, proposing that the denial of Plaintiff's claim for disability insurance benefits be affirmed. (R & R, Dkt. Entry 19.)[1] In his objections, Plaintiff contends the ALJ committed reversible error in failing to find at Step Two of the five-step sequential evaluation process that his fibromyalgia and tarsal tunnel syndrome are "severe" impairments, and in failing to consider limitations from Plaintiff's carpal tunnel syndrome in making a residual functional capacity determination that Plaintiff was capable of working at the light exertional level. (Pl.'s Objections, Dkt. Entry 20, at 1 & 5.)

Where, as here, objections to a Magistrate Judge's Report and Recommendation are filed, the court must perform a *de novo* review of the contested portions of the Report. <u>See</u>,

---

[1]For the convenience of the reader of this Memorandum opinion in electronic form, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the use of hyperlinks.

e.g., Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)).  Although review is *de novo*, the Court is permitted to "rely upon the Magistrate Judge's proposed findings and recommendations to the extent [it], in the exercise of sound discretion, deem[s] proper."  Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980) and Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984)).

When reviewing the denial of disability benefits, the Court must deem conclusive the findings of the Social Security Administration if they are supported by substantial evidence.  42 U.S.C. § 405(g); see, e.g., Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting  Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)).  A court should not set aside a decision if it is supported by substantial evidence, even if it would have decided a factual inquiry differently.  See, e.g., Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).  The evidence of record will be assessed in the context of this deferential standard of review.

I. FACTUAL BACKGROUND

On May 8, 1999 (the alleged onset of disability date), at the age of thirty-eight, Mr. Desando slipped on a puddle of water in a stairwell at work and fell down a flight of stairs, striking his buttocks on eight steps as he fell. (Administrative Record ("AR"), 341.) He was then taken to Community Medical Center where he was treated and an x-ray was performed. (AR. 338.) It was noted that Mr. Desando could walk, but experienced some pain sitting. (AR. 340.)

Michael Alocci, M.D., Mr. Desando's family physician, ordered an x-ray of his lumbosacral spine three days after the accident on May 11, 1999. (AR. 148.) The x-ray revealed mild degenerative changes at L4-5 and no acute fractures. (Id.) Thereafter, an MRI performed on Mr. Desando's lumbar spine on August 2, 1999, did not find any abnormalities.[2] (AR. 147.) Neither the x-ray nor the MRI reported any limitation so severe as to prevent Mr. Desando from performing light duty work with restriction.

Other doctors seen by Mr. Desando arrived at similar diagnoses. Ted Piotrowski, M.D., on May 25, 1999, treated Mr. Desando for back and right leg pain. (AR. 100.) Dr. Piotrowski found no acute distress, and only "some tenderness to palpation over the right buttock area." (Id.) Mr. Desando had some difficulty reaching to his knees and limited back extension, lateral,

---

[2]On August 25, 1999, Plaintiff saw Dr. Alocci for pain he was experiencing as a result of dropping a brush on his left foot. An x-ray revealed "[no] fracture or acute bony abnormality," and "some mild plantar calcaneal spurring." (AR. 149.)

and rotational movements, but he had normal sensation, good strength in the lower extremities and a normal gait.  (Id.)  Dr. Piotrowski's impression from the visit was a "possible contusion to the lower back area" and a possible strain, for which he prescribed physical therapy, Celebrex, and "Soma" for muscle relaxation.[3]  (Id.) (emphasis added.)

On September 27, 1999, Mr. Desando met with Elizabeth Karazim-Horchos, D.O., for physical medicine and rehabilitation.  (AR. 121.)  Upon examination of his lower extremities, she observed "5/5 strength for bilateral hip extension, flexion, abduction, adduction, knee extension, flexion, dorsi and plantar flexion."[4]  (Id.)  He had "increased pain in the right SI area with palpation."  She found he had "lower back pain secondary to right SI joint dysfunction as well as lumbar facet arthropathy."  (Id.)  She thought he would benefit from physical therapy.[5]

Mr. Desando also continued to treat with Dr. Alocci.  (AR 209-12.)  In his entry for November 19, 2002, Dr. Alocci indicated that Mr. Desando had discontinued Vicodin some time ago due to elevated liver function tests, but was having so much pain that he was seeking other pain relief medication.  (AR 212.)  Dr. Alocci prescribed Vicoprofen.  He also noted that Mr. Desando had cancelled an appointment with a rheumatologist "for personal reasons."  (Id.)  Dr.

---

[3]On June 9, 1999, Mr. Desando was discharged from Physical Therapy as a result of non-attendance without notification.  (AR. 103.)

[4]She noted that he was taking Vicodin and several non-steroidal anti-inflammatory pain medication without significant relief.  (AR. 121.)

[5]On October 14, 1999, Allied Rehab reported that Mr. Desando was prematurely discharged at his request and that his goals of improvement were not met.  (AR. 107-08.)

4

Alocci noted Mr. Desando's reported symptoms as aches and pains in the muscles and joints, as well as back pain, and included as part of the action plan for treatment of fibromyalgia rescheduling the appointment with a rheumatologist. (Id.)

Marianne J. Santioni, M.D., a rheumatologist, examined Mr. Desando on January 17, 2003. (AR. 159.) She noted that Mr. Desando was in a motor vehicle accident on May 19, 2002, and complained of neck, back, joint and jaw pain. (Id.) She also noted that Mr. Desando underwent a cervical spine fusion for three herniated discs nine years previously after an auto accident. (AR. 158.) She reported normal blood work and negative rheumatoid arthritis factor. (AR. 159.) She observed that Mr. Desando had a history of carpal tunnel and was wearing wrist splints. (AR. 158.)

Dr. Santioni ordered Mr. Desando to have an EMG study and two MRIs, one of the cervical spine and the other of the temporomandibular joint. The MRIs took place on July 9, 2003. (AR. 152-55.) John P. Iannone, M.D., observed that the MRI of the cervical spine showed, "overall, <u>mildly</u> advanced degenerative changes with a small broad based central disc herniation and osteophyte complex at C6-7 but without canal stenosis." (AR. 153.) (emphasis added.) He observed that the MRI of the temporomandibular joint showed the right side of the joint "demonstrates an anteriorly . . . dislocated meniscus without adequate reduction on the open mouth view." (AR. 154.) Neither MRI showed that there are any significant limitations or abnormalities.

5

Mr. Desando did not have the EMG study conducted until more than one year after it was recommended by Dr. Santioni. Moreover, he cancelled his February, 2003 appointment with Dr. Santioni.

He was next seen on May 5, 2003 by Dr. Alocci, who reported that physical therapy was "helping his fibromyalgia." (AR. 211.) Dr. Alocci also observed that Mr. Desando could not go to physical therapy more than twice per week "due to his personal schedule and taking care of his children at home." (Id.)

Mr. Desando was examined by Dr. Santioni on June 27, 2003. (AR. 234.) She noted that he reported that his aches and pains were worse, his fingers were swollen, and he was fatigued due to the absence of restorative sleep. (Id.) A follow-up exam was scheduled for July 22, 2003, but Mr. Desando failed to show. (AR. 233.)

Sander J. Levinson, M.D., on August 18, 2003, conducted a consultative examination of Mr. Desando for the Pennsylvania Bureau of Disability Determination. (AR. 162-66.) Mr. Desando had no edema in the extremities or calf tenderness. (AR. 164.) Dr. Levinson observed that Mr. Desando had good motor strength in the upper and lower extremities and had a limitation on flexion and extension of the lumbar spine. (Id.) In examining Mr. Desando's ability to perform work-related activities, Dr. Levinson found no limitations for lifting, carrying, standing, walking, sitting, pushing, pulling, or other physical functions. (AR. 165-66.) Mr. Desando was only limited to occasionally performing postural activities, such as bending,

kneeling, stooping, crouching, balancing and climbing.[6]  (AR. 166.)

An entry of Dr. Alocci dated November 31, 2003, indicates that Mr. Desando had fibromyalgia but failed to follow-up with Dr. Santioni.  (AR. 209.)  He was next seen by Dr. Santioni on December 30, 2003.  She noted that he had not yet had the EMG study performed.  (AR. 233.)

Finally, Kenneth W. Lilik, M.D., conducted an EMG on February 9, 2004.  (AR. 199).  Upon examination, Dr. Lilik observed:

> [Mr. Desando's] deep tendon reflexes were absent at the Biceps, Triceps and Quadriceps bilaterally.  His Achilles reflexes were significantly decreased.  He had pain upon tapping of the Median nerves at the wrists, right worse than left and pain upon tapping the plantar nerves posterior to the Medial Malleoli, right worse than left.  There was no loss of sensation in his lower or upper extremities.  There was no loss of strength in the lower or upper extremities.

(Id.)  Dr. Lilik concluded that Mr. Desando exhibited chronic <u>mild</u> bilateral L5 and S1 radiculopathies, chronic <u>mild</u> left L4 radiculopathy, right medial plantar neuropathy, chronic <u>mild</u> right C7 radiculopathy, <u>mild</u> bilateral ulnar neuropathy at the elbows and <u>mild</u> bilateral median neuropathies at the wrists, right worse than the left.   (AR. 200.)

Dr. Lilik's report was summarized in Dr. Santioni's examination note of March 24, 2004.  (AR. 232.)  She observed that Mr. Desando complained of achiness and stiffness of his elbows, wrists, and fingers, especially in the morning.  (Id.)  She also reported that he complained of

---

[6]Mr. Desando's Physical Therapist, on April 30, 2003, stated he "appears able to manage [his] condition."  (AR. 124.)

never feeling 100% and of not sleeping well.  Her entry includes the notation "fibro fog," apparently referencing what the National Fibromyalgia Research Association describes as the "cognitive dysfunction segment of fibromyalgia." (National Fibromyalgia Research Association, Fibro Fog, http://www.nfra.net/fibromyalgia-fibro-fog.htm (last visited Mar. 31, 2009).  Notably, however, Dr. Santioni's notes do not include a diagnosis of fibromyalgia.

## II. DISCUSSION

Mr. Desando's last day as insured for social security benefits was March 31, 2004.  (AR. 295.)  Considering the observations by the five doctors mentioned above, there is simply no evidence that Mr. Desando was not capable of performing light duty work with restriction before March 31, 2004.  None of the doctors limited Mr. Desando's ability to work, or found significant impairments.  For example, Dr. Lilik's observations, made less than two months before March 31, 2004, do not demonstrate that Mr. Desando is disabled from working – all of Mr. Desando's conditions are described as mild, and there is no loss of sensation or strength in the upper or lower extremities.

Furthermore, evidence subsequent to March 31, 2004, supports a conclusion that Mr. Desando can perform light duty work with restrictions.  On September 2, 2004,a Residual Functional Capacity Assessment form was completed by an agency medical consultant.  (AR. 169-76.)  The study concluded that Mr. Desando could occasionally lift up to 20 pounds, and frequently carry 10 pounds.  He could stand or walk about six hours in a eight hour workday; sit

for about six hours in a an eight hour workday, and push or pull without limitation.  (AR. 170.) He was limited to occasionally climbing, but could frequently stoop, kneel, crouch, and crawl. (AR. 171.)  No other limitations were noted, and other than the testimony of Plaintiff and his wife, there is no conflicting evidence in the record.

An MRI conducted on May 11, 2006, found that "[a]t T11-T12, there is a mild left paracentral disc herniation causing mild impression on the anterior thecal sac.; [a]t L5-S1, there is a tiny right lateral disc protrusion noted."  (AR. 358.)  On February 2, 2007, Dr. Alocci reported that Mr. Desando is doing well.  "His hypertension is well controlled.  He is taking his medication with no side effects."  (AR. 354.)   He further noted that Mr. Desando continued to have chronic pain, especially in his hips, but that his hypertension and fibromyalgia were stable. (Id.)  Dr. Alocci also observed that Mr. Desando was unable to follow up on prescribed aqua therapy "due to he is taking care of his children, has a lot to do during the day."  (Id.)  Thus, evidence subsequent to March 31, 2004, supports the conclusion that Mr. Desando was able to perform light duty work with restrictions as of that date.

Mr. Desando objects to the ALJ's failure to make any finding at Step Two of the five-step sequential evaluation process as to whether his fibromyalgia and tarsal tunnel syndrome presented "severe" impairments prior to the date last insured.[7]  (Pl.'s Objections, Dkt. Entry 20,

---

[7]An impairment is regarded as severe if it imposes significant restrictions on a claimant's ability to do basic work activities.  See 20 C.F.R. § 404.1521.

at 1.) Mr. Desando claims that Dr. Santioni diagnosed him with fibromyalgia on March 24, 2004, and that Dr. Alocci repeatedly diagnosed him with fibromyalgia. Although a diagnosis of fibromyalgia is not apparent on Dr. Santioni's handwritten entry for March 24, 2004, what is apparent is that no entry was made as to the degree to which the achy and stiff joints mentioned in her note interfered with Mr. Desando's ability to work. (AR. 232.)

>As explained in Elliott v. Astrue, 507 F. Supp. 2d 1188, 1194-95 (D. Kan. 2007):
>
>[T]he first consideration at step two is what, if any, medically determinable impairments plaintiff has regardless of the credibility of her allegations of the severity of those impairments. A medically determination impairment 'must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings.' 20 C.F.R. §§ 404.1508, 416.908.

The disability claimant has the burden of showing a medically determinable impairment that imposes significant restrictions on a claimant's ability to do basic work activities. See 20 C.F.R. § 404.1520(a)(c). The American College of Rheumatology has adopted guidelines that identify clinical signs and symptoms supporting a diagnosis of fibromyalgia. See Brown v. Barnhart,182 F. App.'x 771, 773 n.1 (10th Cir. 2006). The guidelines provide that a diagnosis of fibromyalgia is indicated where there is "'widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body.'" Id. Courts have "recognized this trigger point requirement, noting that 11 out of 18 trigger points are necessary for a diagnosis of fibromyalgia under accepted medical criteria." Contreras v. Astrue, No. C 06-6017, 2009 WL

196153, at *4 (N.D. Cal., Jan. 27, 2009) (citing Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001)). In this case, Mr. Desando has not pointed to any evidence that a physician found that he had the clinical signs and symptoms consistent with a diagnosis of fibromyalgia.

In any event, the failure of the ALJ to consider whether fibromyalgia was a medically determinable impairment that imposed significant restrictions on Mr. Desando's ability to perform basic work activities is harmless in this case. The ALJ found that other impairments, which Mr. Desando claimed to be disabling, were "severe".[8] Step Two of the Commissioner's five step sequential evaluation process "is a threshold analysis that requires [the claimant] to show that he has *one* severe impairment." Bradley v. Barnhart, 178 F. App.'x 87, 90 (7th Cir. 2006) (emphasis in original). Because the ALJ found that Mr. Desando did have severe impairments sufficient to move beyond the second step of the five-step sequential evaluation process, his failure to address fibromyalgia is irrelevant and harmless.[9] See Salles v. Commissioner of Social Security, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); Bradley, 175 F. App.'x, at 90;

---

[8] In his Disability Report, Mr. Desando claimed that his ability to work was impaired by upper and lower chronic back pain, fibromyalgia, hypertension, anxiety, depression, heel spurs, temporomandibular joint syndrome, and spinal surgery. (AR. 62.)

[9] Mr. Desando's claim for benefits was denied at the fifth and final step of the sequential evaluation process, after the ALJ determined that Mr. DeSando's impairments precluded him from returning to his prior work.

Bliss v. Astrue, Civil Action No. 08-980, 2009 WL 413757, at *1 n.1 (W.D. Pa. Feb. 18, 2009) ("[A]s long as a claim is not denied at Step Two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe").

Further supporting the conclusion that a remand is not needed to remedy the failure of the ALJ to address fibromyalgia at Step Two is the absence of medical evidence concerning the degree of impairment attributable to it. As noted above, the claimant has the burden of proof at Step Two, and failure to provide medical opinion evidence that fibromyalgia has more than a minimal affect on the ability to perform basic work activities renders meaningless the ALJ's failure to address it. See Munday v. Astrue, 535 F. Supp. 2d 1189, 1198 (D. Kan. 2007).

As to the tarsal tunnel syndrome, Dr. Lilik's EMG on February 9, 2004, showed symptoms consistent with tarsal tunnel syndrome, but no other evidence supports a claim that tarsal tunnel syndrome significantly limited Mr. Desando's abilities to do basic work activities prior to the date last insured. Indeed, Plaintiff did not assert that tarsal tunnel syndrome imposed a significant limitation on his ability to work until briefs were filed in this case. Furthermore, Dr. Lilik's finding of a right medial plantar neuropathy consistent with tarsal tunnel syndrome does not compel a finding that the condition posed a severe impairment on the ability to perform basic work activities, and Mr. Desando does not explain how tarsal tunnel syndrome would have affected the five-step analysis undertaken by the ALJ. Accordingly, a remand is not warranted. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005). That is, the failure to

address at Step Two the fact that tarsal tunnel syndrome was diagnosed in February of 2004, like the failure to address fibromyalgia, is harmless.

Although acknowledging that the ALJ found at Step Two that his carpal tunnel syndrome presented a severe impairment, Mr. Desando further objects that the ALJ failed to properly consider limitations from his carpal tunnel syndrome in determining his residual functional capacity.  (Pl.'s Objections, Dkt. Entry 20, at 6-7.)  In this regard, Mr. Desando argues the ALJ did not fully consider the limitations he reported on his daily activity questionnaire.  He reported on the questionnaire that performing personal care takes him longer when he has a "flare up." (AR. 80.)  This includes fastening buttons, putting small toys together and bending.  In addition, he reported that he could only dress himself, shower and make the bed "at times."  (AR. 82.)  He needed to rest between activities depending on the level of pain.  (AR. 81.)  Mr. Desando further stated he could walk up stairs or walk a few blocks only if his pain was not severe, and he could only perform "light housework."  (AR. 80-81.)

The ALJ considered Mr. Desando's limitations, but nonetheless found that he performed, or was able to perform, certain activities:

> [T]he daily activities questionnaire which the claimant completed prior to his last insured date shows that he was able to take care of his own personal grooming and hygiene without any problems, as well as perform some household chores such as taking out the trash, cooking, vacuuming and light house work.  He also did not have any problems dialing a regular touch tone telephone, operating a standard television remote or using a knife and fork.

(AR. 295.) (internal citations omitted.)  The ALJ concluded that the Plaintiff's statements, and

13

his wife's statements "concerning the intensity, duration and limiting effects of these symptoms are not entirely credible on and before the last insured date of March 31, 2004, when disability has to be proven, considering the [ ] medical evidence." (AR. at 295.)  It is evident that, contrary to Mr. Desando's assertion (see Pl.'s Objections, at 7), the ALJ considered the limitations of Mr. Desando's impairments, but did not find them entirely credible, or supported by sufficient medical evidence.

Under these circumstances, a reasonable person could consider the evidence cited by the ALJ and his resolution of the conflicting evidence in the daily activity questionnaire as adequate to support his conclusion.  Thus, I find that the ALJ's decision that Plaintiff had the residual functional capacity to perform light duty work with restrictions supported by substantial evidence.

ACCORDINGLY, having carefully considered the October 1, 2008 Report and Recommendation of the Magistrate Judge, proposing that the denial of Plaintiff's claim for disability insurance benefits be affirmed, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of the Magistrate Judge (Dkt. Entry 19) is ADOPTED.

2. The decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits is AFFIRMED.

3. The Clerk of Court is directed to enter judgment in accordance with this Order.

                                              s/ Thomas I. Vanaskie
                                              Thomas I. Vanaskie
                                              United States District Judge